**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 1:2-cr-000085(CRC)** |
| **DR. SIMONE GOLD,** | : | |
| | : | |
| **Defendant.** | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

The defendant, Dr. Simone Gold, through her attorneys, Dickson Young and

Kira Anne West, pursuant to Federal Rule of Criminal Procedure 32 and 18 U.S.C.

Section 3553(a), respectfully submits this memorandum to aid the Court at

sentencing and hereby notifies the Court that she has received and reviewed the

Presentence Report ("PSR") prepared in this case.  After carefully reviewing the

PSR with Dr. Gold, she has minor objections and factual corrections that were sent

to the probation officer.[1]  For the reasons set forth herein, Dr. Gold requests that

this Honorable Court impose a sentence of time served,  60  hours of community

service and $500 restitution  to account for:

1.     Her lack of need for incarceration,

2.     Her lifelong service as a physician in some of the most underserved

communities in our nation, and

---

[1] The revised PSR filed June 9, 2022, does not mention these objections and  factual corrections previously sent to the probation officer. They will be addressed at the sentencing hearing.

3.      Her non-destructive and non-violent behavior that day both outside

and inside the Capitol building.

Dr. Gold comes before the Court having plead guilty  to count 2 of the

Indictment filed  charging her with a violation of Title 18 U.S.C. §1752(a)(1),

Entering and Remaining in a Restricted Building or Grounds.  A sentence of  time

served rather than  additional incarceration of any period is a reasonable sentence

that is "sufficient, but not greater than necessary" to address the sentencing factors

and goals set forth in Title 18 U.S.C. § 3553(a).  Under the facts of this case, such

a sentence will protect the public, provide just punishment, and afford adequate

deterrence. How all these government agencies are going after Dr. Gold is

unprecedented in the annals of federal prosecution.

## 1. <u>BACKGROUND</u>

Dr. Gold has no prior record. She entered a plea as soon as the government

extended an offer and she has complied with all of her conditions of release-save

one time when she went to see her very ill mother.  She expressed remorse about

her presence at the Capitol immediately after she returned to California, before she

was charged.  Remarkably,  unlike almost every other January 6 defendant, she did

not post or tweet anything. She did not stream her speech-a speech she had been

given permission to give that day, albeit not inside the Capitol.  When she was

arrested at gunpoint-20 officers and agents with AR-15's (for someone with no

2

criminal history)  handcuffed and humiliated her. Yet  she cooperated with them and gave them everything they asked for.  She gave them the password to her computer-even after they broke down the door to her home.[2]  The trauma was so bad that Dr. Gold could not stay in her home because each time she saw certain areas of her home where officers had pointed guns at her and handcuffed her, she winced and shuddered at the memory.  So she moved. She spent two days in jail before she made bond.

She engaged in no violence or property destruction. She lost her job.  She did not erase her social media accounts.  Although her conduct was ill informed and unlawful, it was neither aggressive nor hateful. Although an officer was assaulted close to her by the Rotunda doors, Dr. Gold truly has very little recollection of this happening other than the fact that he was immediately helped to his feet by others around her.[3]  She should have left the Capitol when she was asked.  The situation was chaotic as the Court can see from the videos.  This chaos and events from that day clearly clouded her judgment. She agreed with the statement of facts submitted by the government when she plead guilty.

---

[2] Undersigned counsel has noted in other cases that many January 6 defendants with no criminal history and no indication that they were violent, were arrested by teams of law enforcement with AR-15's. This was surely meant to humiliate them in front of their neighbors and to get them to reveal incriminating information before they could get counsel.
[3] Although the defense has tried to identify this officer, efforts have been unsuccessful. The video of this scene shows Dr. Gold being crushed by those around her.

After the presidential election, Donald Trump (hereinafter "Trump") and his inner circle began spreading the word that the election was "stolen" from him by Democrats and others.   https://www.washingtonpost.com/politics/trump-election-voter-trust/2020/12/20/00282aa6-407a-11eb-8db8-395dedaaa036_story.html. False claims were made on media sources, as well as by the President himself, that the election system had been corrupted and that the integrity of the election should be questioned.   While Dr. Gold had been aware of the election integrity issues claimed by Trump, she did not consider herself to be political.

Before the election, Dr. Gold was fired from her job as an emergency room physician because she believed the vaccine *mandates* imposed by the government were an overreach and she spoke freely about this opinion which she based on her medical training and education.  Therefore, she co-founded a non-profit organization with other physicians and began traveling the country to inform the public about what choices they had with regard to the new vaccine for Covid-19 and other readily available treatments.   Dr. Gold was invited to speak at the Ellipse regarding lockdowns on January 6, 2021, and at the last minute, her speech was canceled. Her "team" told her that she could give her speech at the Capital, and that's where they headed. When she and her team arrived at the steps of the Capitol, she waited until she could go in. She entered through the East Rotunda doors after a crowd of others. She did not suit up for combat.  She did not obscure

4

her face.  She was not armed.  She did not yell at anyone. She wore street clothes.

She committed no violent actions during her time inside and outside the Capitol.

She did not destroy anything. Her desire was to give the speech she had been

invited to give and hopefully inform the people gathered there that they had a

choice in their own healthcare.  Critically, just days after January 6, she told a

reporter at the Washington Post that she regretted her actions.



See Full Article at https://www.washingtonpost.com/investigations/simone-gold-

capitol-riot-coronavirus/2021/01/12/d1d39e84-545f-11eb-a817-

e5e7f8a406d6_story.html.

To top it all off, Dr. Gold now has to fight to keep her medical license in California. She received a letter in late 2021 from the California Medical Board threatening to take away her medical license for "an instance of misinformation" which is not within their regulatory scope.  According to Dr. Gold, the State of California can only take away a medical license if the accusation involves medical care of a patient.[4]  Recently, Dr. Gold received a letter from the State of Florida, Department of Health, stating that she is being investigated for offense 18 USC 1752. The letter says that she is being investigated for the offense of Treason. *See* Exhibit 1, letter, filed under seal.

She now stands before the Court again, remorseful of her actions, and asks this Court to exercise grace and compassion in the sentence the Court must give.

## II.  LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense.   Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and

---

[4] California has a law before the House, house bill 2098 that would delicense doctors based on free speech. On page 9 of the committee hearing they state Dr. Gold by name.

provide just punishment; afford adequate deterrence to criminal conduct; protect

the public from further crimes of the defendant; and provide defendant with needed

educational or vocational training, medical care, or other correctional treatment in

the most effective manner. *Id.* at § 3553(a)(2)(A-D).  Section 3553(a) further sets

forth the factors that the Court must consider in fulfilling this provision:

1.    The nature and circumstances of the offense and the history and characteristics of the defendant;
2.    The need for the sentence imposed;
3.    The kinds of sentences available;
4.    The kinds of sentence and the sentencing range…;
5.     Any pertinent policy statements issued by the Sentencing Commission;
6.    The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
7.    The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

## III.  FACTORS CONSIDERED PURSUANT TO 18 U.S.C. §3553(a)

At sentencing, a district court must impose a sentence that is "sufficient, but

not greater than necessary" in light of the factors identified in §3553(a).    *United*

*States v. Mendoza-Mendoza*,  597 F.3d 212, 216 (4ᵗʰ Cir. 2010), *citing Kimbrough*

*v. United States*, 552 U.S. 85, 111 (2007)(quoting §3553(a)).

### A. Nature & circumstances of the Offense & the History and Characteristics of Dr. Gold

First, the defense is not aware of any evidence that defendant's entry into the

Capitol was violent in any way.  Her intention that day was to give a speech she

was invited to make for which  a permit was issued in an area other than the

Capitol.  Second,  Dr. Gold did not engage with others while parading in the Capitol.  For example, she didn't chant "whose house, our house" or "USA, USA" like literally thousands of other protesters.  Third, there is no evidence that she engaged in any violence or questionable conduct towards law enforcement.  When Dr. Gold was asked to leave the building, she hesitated because she had not finished a speech that she had taken months to perfect.  This was wrong of her, and she regrets not leaving immediately. Fourth, the defense is not aware of any evidence that she destroyed or stole any property from the Capitol. Fifth, based on the Government's investigation, it appears that she remained in the Capitol building for a limited period of time.  The defense is not aware of any evidence that she entered any rooms or offices in the Capitol, any personal space or the Senate or House Chamber.  To her credit, she acknowledged her misconduct immediately when asked by a neutral party-a reporter. This was before she ever had the slightest inkling she could be charged with a crime.

The government concedes that she committed no violent acts and destroyed no property. Her actions within the Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, she did not destroy property, steal property or commit violent acts.   She entered and exited through doors. And when she spoke to police officers, it was non-confrontational and respectful.

This has been a long road for Dr. Gold and her family.  She is a single mother, and very proud of her two children.  She will never get over the day she was arrested and incarcerated. She is now fearful of police.  She has repeatedly been threatened on social media cites and news outlets.  Her relationships with many friends and family are strained because of her actions.  She lost her job and had to search for another one.   Her ability to travel and do her job has been hampered by the fact that TSA put her on a no fly list even BEFORE she pled guilty.  She pled guilty at an early stage in the proceedings thus saving valuable judicial resources. It is of utmost importance to Dr. Gold that this Court understand that she is incredibly remorseful for her actions on January 6, 2021. *See* Video Exhibit.  None of her actions will be erased from the internet. It's there forever.  She has fully accepted responsibility for her bad judgement in entering the Capitol building and giving a speech by pleading guilty. She has been the subject of a number of media accounts lumping her with others that were there on January 6, 2021 for violent purposes. Her personal character and reputation will forever be tarnished.  Still, she has hope that she can continue to serve her community, help and heal others less fortunate than herself, and continues to show remorse and sincere regret for getting involved with President Trump's call to the Capitol that day.

Dr. Gold does not seek to minimize the harm caused by her behavior by the explanations in this sentence memo. Nonetheless, in determining what punishment

is warranted, this Court should not lose sight that she did no harm, intended no harm, and regrets that she was even there.  Most telling about Dr. Gold is despite all she has been through, the constant harassment by TSA and the inability to fly even before she entered her plea of guilty, she presses on.  She has the support of some of her family and friends.[5] Her law abiding past and her post arrest behavior show that she is capable of being a very productive citizen and the Court can rely on that as a basis to sentence her to time served considering the 3553 factors.

**B. Need for the Sentence imposed**

1. **General deterrence – 18 U.S.C. § 3553(a)(2)(B) – to adequately deter others from criminal conduct**

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation.  She has already been severely punished as noted *supra.*  The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a sentence that leaves a person unable to do her work when other reasonable alternatives exist

---

[5] The Court will refer to the video that was made which highlights friends and former colleagues.

would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A sentence of time served does constitute punishment and it will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. She has been on pretrial release for a year and ½ with many restrictions. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

**2. Specific deterrence – 18 U.S.C. § 3553(a)(2)(C) – to protect the public from further crimes of the defendant**

Dr. Gold's likelihood of recidivism is non-existent. She has expressed genuine remorse and contrition, and accepted the first plea offer tendered with no hesitation. Her acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and

punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels… reached that conclusion, as has every major survey of evidence." *Id.*; *See also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. Given Dr. Gold's  current age  and other issues consistent with what is mentioned above, the likelihood that she would ever re-offend is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice.  The alternatives to incarceration make financial sense, conserve bed space

for individuals from which society would need greater protection and would serve the ends of justice.  Dr. Gold urges the Court impose a sentence of time served in this case in light of her family obligations (caring for her elderly mother and raising her two boys), her sincere and complete remorse,  her non-violent conduct at the Capitol, and her early and consistent acceptance of responsibility, and the lack of a need to further deter her.

### C.  The kinds of sentences available

The sentencing guidelines do apply  in this case with a range of 0-6 months. A sentence of  additional incarceration would result in sentencing disparity with other individuals who were similarly charged and behaved similarly. *See infra*.[6]

Dr. Gold respectfully asks that the Court impose a sentence of time served combined with 60 hours of community service.  This would be particularly appropriate given her  job and the harsh punishment any additional custodial sentence would impose by potentially causing her to lose her job-again.

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered in this case.  Defendant's financial condition is modest as outlined in the PSR and she respectfully submits that she cannot pay any significant fine.  *See* PSR, paragraph 7.  However, Dr. Gold does submit that a reasonable fine is warranted. *See* PSR, paragraph 82.

---

[6] This does not include every case, just a sampling.

## D. The need to avoid unwarranted sentence disparities

If this Court were to impose a sentence greater than time served, community

service, and/or restitution, it would create an unwarranted sentencing disparity

compared to similar cases that have already gone to sentencing in this Court.  The

following cases are a sampling where a class B misdemeanor was charged and pled

to and resulted in no incarceration with facts that often were more egregious than

Dr. Gold's:

\*\**United States v. Anna Morgan-Lloyd,* 21-cr-00164 (RCL) (Jun. 28, 2021)
(sentenced to probation);
\*\**United States v. Danielle Doyle*, 21-cr-00324 (TNM)(Oct. 1, 2021) (sentenced to
probation even though she entered through a broken window and yelled at police
officers);
\*\**United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (sentenced
to probation);
\*\**United States v. Jessica Bustle and Joshua Bustle,* 21-cr-00238 (TFH), ECF
Nos. 42 & 44 (sentenced to supervised release with home confinement even though
Ms. Bustle 1) posted on social media that Mike Pence was a traitor, 2) denied
media accounts of violence were accurate, minimized the conduct of all of the
rioters, 3) called for a revolution even after the events of January 6, 4) encouraged
the rioters to be proud of their actions, and 5) minimized the impact of that day on
lawmakers and democracy. *See United States v. Jessica and Joshua Bustle*, 21-
00238 (TFH). Judge Hogan imposed a probationary sentence with a short period of
home confinement for Ms. Bustle and an even shorter period of home confinement
for Mr. Bustle. The government recommended probation in this case.
\*\**United States v. Andrew Bennett,* Crim. No. 21-227 (JEB)(sentenced to three
months home confinement and two years probation). According to the government,
who recommended probation with a short term of home confinement*,* Mr. Bennett
espoused conspiracy theories about the election, was an admirer, albeit not a
member of the Proud Boys, and boasted about his conduct. According to the
government, Mr. Bennett did not come to the rally in D.C. on a whim, but rather
planned it for months. He posted numerous times about conspiracy theories and a
fraudulent election. On January 4, 2021, he posted to his Facebook page, "You
better be ready chaos is coming and I will be in DC on 1/6/2021 fighting for my

freedom!". On January 6, according to the government, Bennet began livestreaming video to his Facebook page from outside the Capitol as early as 1:00 p.m. He was in the middle of the growing crowd on the West Front of the Capitol, where some taunted police officers and sporadically threw objects at them. The government alleges that someone near Bennett exhorted others to "move forward" and that Bennett yelled at a police officer. Bennett also filmed assaults on the police officers and continued to livestream events inside the building.

None of this is to suggest that Mr. Bennett should have received a sentence of incarceration, only to suggest that the distinctions the government draws are hard to justify. Comparatively,  Dr. Gold's conduct would justify a sentence of incarceration and such disparate treatment. The courts have sentenced some January 6 misdemeanor cases to incarceration, but the nature and circumstances of those offenses, as well as the history and characteristics of the defendants in those cases, can be distinguished.

The following cases are a sampling where a class A misdemeanor was charged and pled to and resulted in no incarceration:

**United States v. Brian McCreary, 21-cr-00125 (BAH) (sentenced to 3 months home detention);
**United States v. Jeffrey Witcher 21-cr-00235(RC)(sentenced to 12 months probation); and
**United States v. Felipe Marquez, 21-cr-00136 (RC)  (sentenced to 3 months home detention);
**United States v. Jenny Louise Cudd, 21-cr-00068 (TFM)  (sentenced to 2 months probation)(defendant wore a bullet proof sweatshirt, engaged in a push against law enforcement officers while yell "go" and "charge" and celebrated property destruction and lacked remorse) See ECF 90.

In the following cases the defendants were given short sentences of incarceration by this Court but their behavior was much worse than Dr. Gold's:

**\*\*United States v. Jennifer Ryan** 21-cr-00050(CRC)(sentenced to 2 months incarceration)(the defendant posted and live streamed her activity; she was "publicly cheerleading on a violent attack"(*See* ECF 48); she said the events were "a prelude to war" she shouted "fight for Trump" and "Hang Mike Pence"; she tweeted a photograph of a broken window that encouraged additional violence and she had no remorse;

**\*\*United States v. Anthony Scirica**, 21-cr-000457 (CRC)  (sentenced to 15 days incarceration). Here, remarkably, the defense agreed with the government's 15 day recommendation of incarceration. The defendant was not remorseful, close to chamber where vote took place, close to police line, chanted USA at police, and directed the crowd inside the capitol. He also took photos and video of himself. *See* ECF 17.

**\*\*United States v. Gracyn Courtright**, 21-cr-00072 (CRC)  (sentenced to 30 days incarceration)(the defendant went onto the Senate floor; picked up a "members only" sign and only returned it because an officer ordered her to; posted on social media that showed a complete lack of remorse; and chanted at a line of police officers "whose house, our house and USA, USA.").

All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Dr. Gold's conduct and characteristics. Dr. Gold's actions fall on the low-end of the spectrum that day and her culpability appears to be minimal in contrast with rioters who posted hateful messages, destroyed or stole government property and assaulted or threatened the law enforcement officers on that date.  She has been incapacitated by these events yet she remains optimistic and holds our legal and democratic processes in the highest regard.

**IV. CONCLUSION**

Considering all the applicable factors the Court will consider, Dr. Gold respectfully moves this court to impose a sentence of time served. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, that would consider Dr. Gold as an individual and account for her unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

Respectfully submitted,

By:  _____ /s/ _____
Dickson Young, Esq.

Whitestone Young PC
10513 Judicial Drive, Suite 300
Fairfax, Va. 22030
Va. Bar No. 956979
Phone: (703) 591-0200
Direct: (703) 214-5207
Fax: (703) 591-7238

By:  _____ /s/ _____
Kira Anne West
DC Bar No. 993523
712 H. St. N.E., Unit #509
Washington, D.C. 20005
Phone: 202-236-2042
kiraannewest@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify on the 9th day of June, 2022 a copy of same was delivered to the parties of record, by email  pursuant to the Covid standing order and the  rules of the Clerk of Court.

                                                             _____ /S/
                                                             Kira Anne West